USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-26-19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VADIM KAPLUN,

        Petitioner,

-against-

UNITED STATES OF AMERICA,

        Respondent.

15-cv-9190 (JGK)

MEMORANDUM OPINION AND ORDER

JOHN G. KOELTL, United States District Judge:

The petitioner, Vadim Kaplun, brings this petition for a writ of error coram nobis alleging that he received ineffective assistance of counsel before pleading guilty in 1998 to one count of securities fraud. The petitioner seeks to vacate that guilty plea. For the reasons discussed below, the petition is **denied**.

I.

A.

The petitioner, a noncitizen, was born in the Soviet Union – what is now Ukraine – and emigrated to the United States in 1977. Tr. at 8. He received his green card shortly thereafter. Id.

In June 1998, following a jury trial in the Southern District of New York, the petitioner was convicted of one count of participating in a conspiracy to commit securities fraud, two counts of wire fraud, three counts of Travel Act violations, and

two counts of money laundering (the "J&S Securities case"). No. 97cr108-4 (S.D.N.Y.). In December 1998, based on separate conduct, the petitioner was charged in a one-count information with securities fraud, in violation of 15 U.S.C. §§ 77k and 77q, and 18 U.S.C. § 2 (the "Mugs Plus case"). No. 98cr1387 (S.D.N.Y.). In March 1999, while represented by the same counsel who tried the petitioner's J&S Securities case, the petitioner pleaded guilty without a plea agreement to the Mugs Plus information. GX 4 at 3. In March 2000, the petitioner was sentenced principally to fifty-six months' imprisonment in both cases, to be served concurrently. No. 97cr108 Dkt. 262; No. 98cr1387 Dkt. 11. This constituted a downward departure from the then-mandatory guidelines range of sixty-three to seventy-eight months' imprisonment. See GX 10 at 32. The petitioner was also ordered to pay restitution of $3,709,828.50 in connection with the J&S Securities case. No. 97cr108 Dkt. 262.

Based on the petitioner's convictions and noncitizen status, the former Immigration and Naturalization Service – now the Department of Homeland Security – initiated removal proceedings against the petitioner. Certified Administrative Record ("CAR") at 956, 958. The petitioner denied the charges of removability and filed an application for various forms of relief, including deferral of removal under the Convention Against Torture ("CAT"). See id. at 335-38. In April 2004, the

2

immigration judge ("IJ") granted the petitioner's request for CAT relief. Id. at 332. In a later proceeding, in February 2006, the IJ held that the petitioner's convictions in the J&S Securities case were not aggravated felonies requiring a finding of removability, but that the petitioner's conviction obtained through his plea in the Mugs Plus case constituted an aggravated felony pursuant to 8 U.S.C. § 101(a)(43)(M) because it was a conviction for a felony involving fraud or deceit in which the loss to the victims exceeded $10,000. Id. at 146-56. The IJ found that the Mugs Plus conviction subjected the petitioner to removal from the United States. Id. at 156.[1]

In August 2006, the Board of Immigration Appeals ("BIA") affirmed the IJ's finding that the petitioner's conviction in the Mugs Plus case constituted an aggravated felony. Id. at 109-11. However, the BIA reversed the IJ's earlier grant of CAT relief to the petitioner, and ordered the petitioner removed from the United States. Id. at 111-13. The petitioner sought review of the BIA decision in the Third Circuit Court of Appeals. See Kaplun v. Attorney Gen. of U.S., 602 F.3d 260 (3d Cir. 2010). The Court of Appeals affirmed the BIA's decision that the petitioner's conviction in the Mugs Plus case constituted an aggravated felony but found that the BIA used an

---

[1] The history of immigration proceedings relating to the petitioner are recounted in Kaplun v. Attorney Gen. of U.S., 602 F.3d 260 (3d Cir. 2010).

3

improper standard of review when it reversed the IJ's finding with respect to CAT relief. Id. at 266, 272. The court therefore remanded the case to the BIA to reconsider the BIA's CAT ruling. Id. at 273. On remand, in May 2011, the BIA affirmed the IJ's grant of deferral of removal under the CAT. CAR at 29.

Thus, the petitioner is removable for having been convicted of an aggravated felony, but his removal is deferred under the CAT. Because of this, he can stay within the United States but cannot travel internationally or become a United States citizen or "otherwise regularize his status." Pet. ¶ 5. The petitioner alleges that this inability to travel internationally – and his lack of legal status in the United States – hampers his ability to conduct his online business and earn a livelihood. See id.; Tr. at 20-24.

Represented by counsel different from his criminal defense counsel, the petitioner brings this petition for a writ of error coram nobis alleging that his trial counsel provided ineffective assistance of counsel under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). The petitioner contends that trial counsel rendered ineffective assistance in the Mugs Plus case by advising him that a sentence of fewer than five years' imprisonment would carry no immigration consequences. Had trial counsel properly informed the petitioner of the immigration consequences attached to the Mugs Plus conviction, the

4

petitioner claims that he would have elected go to trial rather than plead guilty to the charge in the Mugs Plus information. The petitioner also contends that trial counsel rendered ineffective assistance by not seeking a plea to one substantive count involving an individual victim whose loss amount was under $10,000, which would have prevented the Mugs Plus conviction from being categorized as an aggravated felony.

## B.

This Court held an evidentiary hearing on these issues on May 30, 2018, nearly twenty years after the petitioner had pleaded guilty in the Mugs Plus case. The petitioner, his criminal defense counsel, one of the prosecutors in charge of the J&S Securities case, and the prosecutor in charge of the Mugs Plus case testified. Having reviewed the evidence and assessed the credibility of the witnesses, the Court makes the following findings of fact and reaches the following conclusions of law.

The petitioner testified that, during the Mugs Plus case, trial counsel encouraged the petitioner to consult with an immigration attorney. Tr. at 9. Trial counsel testified that he either referred the petitioner to an immigration attorney or consulted with one himself, and that he never held himself out as an immigration attorney. Id. at 126-27.

5

Both the petitioner and trial counsel testified that trial counsel's focus in the Mugs Plus case was on obtaining a combined sentence with the J&S Securities case of under five years to mitigate the immigration consequences attached to a conviction. Id. at 10, 127-28. The petitioner testified that an immigration lawyer advised that if the petitioner received a sentence of under five years, the petitioner would "not have any consequences with immigration"; and that trial counsel told him that if the sentence was under five years, the petitioner would not be deportable and his immigration status would not change. Id. at 10. Trial counsel denied categorically that he told the petitioner that the petitioner "was immune from adverse immigration consequences if he were sentenced to under five years." Id. at 127. The petitioner's testimony was not credible.

The petitioner admitted at the evidentiary hearing that he lied under oath during his plea allocution in the Mugs Plus case. The petitioner testified at the evidentiary hearing that at the time he engaged in the fraudulent conduct relevant to the Mugs Plus case, he did not know that his conduct was illegal. Id. at 56. However, at his plea allocution in the Mugs Plus case, the following exchange took place:

> THE COURT: . . . . When you did the acts that you have described to me, did you know that what you were doing was wrong and illegal?
>
> . . . .

6

THE DEFENDANT: Yes.

GX 4 at 19. When questioned about this exchange at the evidentiary hearing, the petitioner stated that he answered "Yes" because "otherwise [the Court] would not have taken [his] plea and [he] would have went to trial." Tr. at 57. This demonstrates that the petitioner was prepared to lie under oath to induce the Court to accept his guilty plea and it illustrates how intent the petitioner was on pleading guilty even without knowing what the sentence would be.[2]

The contemporaneous evidence does not support the petitioner's contention that he was told or believed that a sentence of fewer than five years in the Mugs Plus case would immunize him from any immigration consequences. Rather, a plea would only allow the petitioner to argue for a sentence of fewer than five years on the combined sentencing in the Mugs Plus case and the J&S Securities case, and that would enhance his argument that he was not subject to removal from the United States.

Hence, trial counsel's sentencing letter – which the petitioner attributes at least in part to his alleged understanding that a sentence of under five years would avoid any immigration consequences, see id. at 11 – states only that a sentence of under five years would allow the petitioner to seek

---

[2] The petitioner subsequently denied that he was prepared to give a false statement in order to avoid going to trial. Tr. at 60.

7

withholding of removal. Def. Ex. A at 2. Similarly, at sentencing, trial counsel stated that a sentence of under five years would make it easier for the petitioner to remain in the United States. GX 10 at 15. Trial counsel did not state or imply that such a sentence would avoid all immigration consequences. Trial counsel's sentencing letter and statement at sentencing support trial counsel's testimony at the evidentiary hearing:

> Q: Did you ever tell [the petitioner] that he was immune from adverse immigration consequences if he were sentenced to under five years?
>
> A: Absolutely not.
>
> Q: Did you believe there was a way to avoid the possibility of adverse immigration consequences in the cases that [the petitioner] was facing?
>
> A: It was my belief that there was a way of mitigating or reducing or creating a stronger argument to remain in the country, but I never had any knowledge or belief that [the petitioner] could remain in the country by receiving any type of particular sentence.

Tr. at 127-28.

In sum, no evidence supports the petitioner's contention that trial counsel misadvised him by stating that the petitioner would face no immigration consequences if he received a sentence shorter than five years.

The evidence does not support the petitioner's claim that he would have gone to trial in the Mugs Plus case if he had been informed of the ultimate immigration consequences of his plea – namely that because he is subject to removal but is also subject to the protection of the CAT, he can remain in the United States

8

but cannot travel internationally. While the petitioner alleges that he would not have been subject to these consequences if he had gone to trial and been convicted in the Mugs Plus case, id. at 51, that is simply not true. There is no reason that a conviction after a guilty plea would have subjected the petitioner to greater immigration consequences than the consequences following a conviction for the same offense after a trial.

Rather, the credible evidence showed that the petitioner pleaded guilty because he thought that such a plea would enhance his chance to obtain a lesser sentence of imprisonment. Id. at 52, 130. Trial counsel testified credibly that after the petitioner was convicted in the J&S Securities case, the petitioner did not want to go through another trial; that the petitioner was not financially able to go through another trial; and that the petitioner never seriously entertained going to trial. Id. at 129-130. In addition, the Mugs Plus prosecutor testified that the Government had "substantial documentary evidence" supporting the fraud charge against the petitioner. Id. at 100-01. The prosecutor also testified that trial counsel conveyed that he regarded a guilty plea "as the prudent, appropriate and wise step to take given the evidence in our case and the fact that it would have only incremental sentencing

9

impact given that [the petitioner] had already been convicted in [the J&S Securities] case." Id. at 93.

Moreover, there is no evidence that the petitioner's primary complaint in this petition – his inability to travel internationally and the effect that has on his online business – was a concern during the Mugs Plus case. The petitioner testified that he did not own his online business at the time of his guilty plea and the ability to travel internationally was not one of his considerations in deciding whether to plead guilty. See id. at 52-53.

Finally, the evidence adduced at the hearing does not suggest that trial counsel could have obtained a plea in which the petitioner pleaded to one substantive count in the Mugs Plus case involving a single victim whose loss amount was under $10,000. When asked whether trial counsel ever asked for such a plea, the Mugs Plus prosecutor testified:

> I don't remember whether [trial counsel] ever mentioned anything like that. If he did, it wasn't something we would entertain seriously or that I would even remember because . . . our general practice and especially in a case like this was to require a plea to a charge that encompassed all of the actual misconduct that took place . . . , which was a fraud perpetrated against a number of investors who all invested in the same instrument and resulted in gain to the defendant and his co-conspirators and loss to the victims of [more than] 700,000 [dollars].

Id. at 103. He also testified that the Government sought $722,235.50 in restitution and that he "couldn't have made the

arguments in favor of restitution if the count of conviction was limited to one victim." Id. at 102, 114.

Moreover, although trial counsel testified that he never sought a plea to one substantive count involving a single victim whose losses were under $10,000, he stated that it was "very, very unlikely" that the Government would have accepted such a plea. Id. at 132-33. And, as to the Government's willingness to entertain a favorable plea generally, trial counsel testified that the Government "was not giving me anything. They were giving me, proverbially, ice in the winter." Id. at 134.

## II.

### A.

"[F]ederal courts are authorized to grant the ancient common law writ of error coram nobis under the terms of the All Writs Act, 28 U.S.C. § 1651(a)." Fleming v. United States, 146 F.3d 88, 89 (2d Cir. 1998) (per curiam). When a defendant has served the entirety of the defendant's sentence pursuant to a federal conviction, and is no longer in custody pursuant to that conviction, a defendant's application to vacate the conviction because of an error is properly treated as an application for a writ of error coram nobis. See, e.g., Porcelli v. United States, 404 F.3d 157, 159 (2d Cir. 2005); see also Fleming, 146 F.3d at 89-90 ("Coram nobis is essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal

conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus."). In this case, the petitioner asserts, and the Government does not contest, that he is no longer in custody.

Coram Nobis relief is an extraordinary remedy. To obtain coram nobis relief, "a petitioner must show 'that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ.'" Doe v. United States, 915 F.3d 905, 910 (2d Cir. 2019) (quoting Kovacs v. United States, 744 F.3d 44, 49 (2d Cir. 2014)). "In reviewing a petition for the writ, a federal court must 'presume the proceedings were correct. The burden of showing otherwise rests on the petitioner.'" Fleming, 146 F.3d at 90 (quoting Nicks v. United States, 955 F.2d 161, 167 (2d Cir. 1992)); see United States v. Viertel, No. 01cr571, 2012 WL 1604712, at *1 (S.D.N.Y. May 8, 2012), aff'd, 505 F. App'x 40 (2d Cir. 2012). Because the petitioner has failed to show that his counsel performed deficiently under Strickland, the circumstances in this case do not warrant coram nobis relief.

**B.**

Criminal defendants have a Sixth Amendment right to the effective assistance of counsel during all critical stages of a criminal proceeding. Janvier v. United States, 793 F.2d 449, 451 (2d Cir. 1986). To establish a claim of ineffective assistance of counsel, the petitioner must show both that: (1) his counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time, and (2) his counsel's deficient performance was prejudicial to his case. See Strickland, 466 U.S. at 686; Bunkley v. Meachum, 68 F.3d 1518, 1521 (2d Cir. 1995).

To meet the first prong of the Strickland test, the petitioner must establish that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. The petitioner bears the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citing Strickland, 466 U.S. at 688-89). Although this case concerns representation that took place before the Supreme Court's decision in Padilla v. Kentucky, 559 U.S. 356 (2010), an attorney's misrepresentation to a client about the immigration consequences of the client's guilty plea could constitute

13

ineffective assistance of counsel well before Padilla was decided. See Kovacs, 744 F.3d at 50-51 (collecting cases).

To meet the second prong of the Strickland test, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. When seeking to vacate a guilty plea due to misadvice with respect to immigration consequences, the petitioner must show that there is a reasonable probability that, but for the challenged ineffective assistance, he (1) would not have pleaded guilty and would have insisted on going to trial or (2) "could have negotiated a plea that did not impact immigration status." Kovacs, 744 F.3d at 52; United States v. Couto, 311 F.3d 179, 187 (2d Cir. 2002), abrogated on other grounds by Padilla, 559 U.S. 356.

### III.

#### A.

The petitioner's first claim of ineffective assistance of counsel – that he was misadvised by trial counsel about the immigration consequences of pleading guilty in the Mugs Plus case and would have gone to trial had he known the true potential consequences – fails both prongs of Strickland. There is no credible evidence that trial counsel advised the

petitioner that he would face no immigration consequences if he pleaded guilty and was sentenced to under five years' imprisonment. Trial counsel's sentencing letter, statement at sentencing, and testimony at the evidentiary hearing all prove otherwise. In addition, the immigration consequences of which the petitioner now complains – his inability to travel internationally and the effect that has on his online business – were not considerations relevant to the petitioner at the time of his plea, and there is no evidence that the petitioner's counsel provided erroneous advice on that issue. Indeed, apprising the petitioner of such consequences in this case would have, unrealistically, required trial counsel to predict in advance the attenuated circumstances leading to the petitioner's loss of his right to travel internationally – namely, that the petitioner would suffer no immigration consequences from his J&S Securities conviction, that he would be removable on the basis of the Mugs Plus conviction, that he could and would ultimately obtain CAT relief, and that the CAT relief would inhibit his ability to travel internationally and therefore hamper his then-nonexistent business dealings.

The petitioner finds no support in Qiao v. United States, a case he cites wherein defense counsel erroneously advised the court that home confinement would not subject the defendant to removal from the United States. No. 07cv3727, 2007 WL 4105813,

15

at *1-2 (S.D.N.Y. Nov. 15, 2007). The plaintiff also unpersuasively relies upon Kovacs, a distinguishable case involving defense counsel's misrepresenting to the defendant – who had requested that counsel negotiate a plea that would not have immigration consequences – that pleading to a certain felony would not subject the defendant to removal. 744 F.3d at 48-49. Trial counsel's performance in this case is distinguishable from that of counsel in both of the petitioner's cited cases. The petitioner has failed to prove that trial counsel was deficient under Strickland's first prong.

The petitioner has also failed to prove that he would have gone to trial if he were informed properly of the immigration consequences attached to his guilty plea. Aside from failing to prove that he was improperly counseled in the first instance, the evidence indicates that the petitioner would not have insisted on going to trial. The petitioner sought to minimize his prison time after he had already been convicted in the J&S Securities case. By accepting responsibility in the Mugs Plus case and pleading guilty, the petitioner added an additional argument for a reduced sentence. Indeed, the petitioner was so anxious to plead guilty, he was prepared to lie to the Court to assure that the Court would accept his guilty plea. Tr. at 57. The petitioner's purported willingness to go to trial and risk additional time in prison is especially incredible given the

immigration consequence of which he currently complains - not removal but rather being unable to travel internationally. Moreover, trial counsel testified credibly that the petitioner did not want to go through another trial after the multi-week J&S Securities trial. And the Mugs Plus prosecutor testified credibly that the Government had a strong case against the petitioner.

The petitioner nonetheless argues that there is Strickland prejudice under Lee v. United States, which held, among other things, that a petitioner need not prove that "had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain"; a petitioner need only prove that if properly advised, there is a reasonable probability he would have insisted on going to trial. 137 S. Ct. 1958, 1964-65 (2017). This holding does not help the petitioner because he has not proven that he was misadvised or that he would have insisted on going to trial. And the circumstances leading the Court to find prejudice in Lee are distinguishable from those here. In that case, the evidence showed that the defendant's counsel advised the defendant that the defendant could not be deported if deportation was not included in the plea agreement. Id. at 1963. Deportation was the determinative issue in the defendant's decision to plead guilty. Id. The defendant's counsel testified that "if he had known [the defendant] would be deported upon

17

pleading guilty, he would have advised him to go to trial." Id. The petitioner has failed to prove prejudice, the second prong of Strickland.

**B.**

The petitioner's second claim of ineffective assistance of counsel – that trial counsel did not mitigate immigration consequences by seeking a plea whereby the petitioner would plead guilty to one substantive count against a single victim whose loss amount was under $10,000 – also fails under Strickland. For the reasons already explained, trial counsel did not provide any misadvice under Strickland's first prong. And trial counsel did not provide ineffective assistance by failing to attempt to negotiate a plea bargain that could potentially provide the advantage of international travel more than a decade after the criminal proceeding was over and the complex immigration proceedings had been resolved. See Padilla, 559 U.S. at 369 (noting immigration law's complexity and stating that counsel's duty to advise of immigration consequences is limited when the immigration consequences "of a particular plea are unclear or uncertain").

The petitioner has also failed to show prejudice because he has not shown that there was a reasonable probability that, in a case involving numerous victims and a loss amount of $722,235.50, Tr. at 103, trial counsel could have obtained a

18

plea to one substantive count involving a single victim with a loss amount under $10,000. At the evidentiary hearing, the Mugs Plus prosecutor credibly explained why such a plea would not have been acceptable to the Government, and trial counsel added that obtaining such a plea would have been "very, very unlikely." Id. at 103, 114, 132.

The petitioner again unpersuasively cites Qiao and Kovacs for support. The petitioner makes much of the fact that in Qiao, under vastly different circumstances, the Government presumed that the defendant could have pleaded guilty to the same offenses but with a loss amount under $10,000. 2007 WL 4105813 at *3. All the evidence in this case, however, shows just the opposite. The petitioner's reliance on Kovacs fails for the same reason. In that case, no evidence suggested that the Government would not have accepted a plea that would have left the petitioner's immigration status intact. See Kovacs, 744 F.3d at 53. Indeed, unlike here, the district court in Kovacs did not conduct an evidentiary hearing to address that issue. See id. at 48.[3]

---

[3] The petitioner argues that because the Government did not call the Chief of the Securities Fraud Task Force at the time of the Mugs Plus case to testify at the evidentiary hearing, "an adverse inference should be drawn against the government" on the issue of prejudice. Post-hearing Mem. at 11. But the petitioner provides nothing suggesting that the Mugs Plus prosecutor who testified at the evidentiary hearing – the prosecutor in charge of the case – was not qualified to testify about the Government's position on a potential plea.

19

The petitioner has not shown that trial counsel rendered ineffective assistance in failing to obtain an unrealistic plea agreement to one substantive count involving a single victim with a loss amount under $10,000. Accordingly, the petitioner has failed to show ineffective assistance of counsel under Strickland.

\*    \*    \*

In sum, the petitioner has not proven that trial counsel rendered ineffective assistance under Strickland. His petition to vacate his guilty plea through the extraordinary remedy of a writ of error coram nobis is therefore **denied**.

## CONCLUSION

The Court has considered all the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the petitioner's petition for a writ of error coram nobis is **denied**. The Clerk of the Court is directed to enter judgment dismissing the petition. The Clerk is also directed to close all pending motions and to close this case.

**SO ORDERED.**

**Dated:**    **New York, New York**
             **March 26, 2019**

_____
John G. Koeltl
United States District Judge